**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES SANCHO, individually and on behalf of other individuals similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VULCAN MATERIALS COMPANY, a New Jersey corporation,<br><br>Defendant. | Case No.: 1:20-cv-00898-NONE-JLT<br><br>ORDER DENYING MOTION TO GRANT RELIEF FROM SCHEDULING ORDER<br><br>(Doc. 20) |

On February 26, 2021, Plaintiff filed a notice of motion and motion to grant relief from the scheduling order. (Doc. 20). Defendant filed an opposition on March 12, 2021. (Doc. 21). On March 19, 2021, Plaintiff filed a reply. (Doc. 22.) For the following reasons, Plaintiff's motion for relief from the scheduling order is **DENIED**.

**I.     Factual Allegations and Background**

On May 20, 2020, Plaintiff filed a putative class action complaint in the Superior Court of the State of California, County of Kern. (Doc. 1.) The case was removed to this Court on June 26, 2020 pursuant to the Class Action Fairness Act of 2005. (Id.) Leave was granted by this Court on October 28, 2020 to file an amended complaint. (Doc. 15). The operative, first amended complaint was filed on the same day and asserts the following causes of action: 1) failure to pay all wages; 2) failure to furnish accurate, itemized wage statements; 3) failure to pay all wages owed at termination; 4) violations of California Business & Professions Code §§ 17200, *et seq*.; and 5)

1

penalties pursuant to California Labor Code § 2698, *et. seq.*, the Private Attorneys General Act (Doc. 16).

This Court issued a scheduling order on September 17, 2020, setting a mid-discovery status conference for January 14, 2021 and a motion for class certification filing deadline of February 25, 2021, among other deadlines. (Doc. 10 at 1). The parties filed a joint mid-discovery status conference report on January 7, 2021, indicating "the Parties would like to discuss the current scheduling order and deadlines in the case at the conference." (Doc. 18 at 2). The report also states there had been delays in the discovery process due to "Plaintiff being a primary caregiver to his children during the COVID-19 Crisis." (Id. at 3). Upon review of the report, this Court vacated the status conference set for January 14, 2021 and "decline[d] to discuss amending the case schedule absent a showing of good cause, which details the parties' diligence in attempting to meet the deadlines." (Doc. 19). Plaintiff's counsel subsequently filed a motion seeking relief from the scheduling order on February 26, 2021, the day after the deadline to file the motion for class certification. (Doc. 20).

In the motion for relief, Plaintiff's counsel claims that due to "inadvertence, error, and excusable neglect," the motion for class certification was not timely filed. (Id. at 3). More specifically, Plaintiff's counsel erroneously deleted the filing deadline for the motion for class certification from their calendaring system. (Id. at 4). Plaintiff's counsel also admits that he deferred discovery given the June 28, 2021 mediation date and "was not in [a] position to file a fulsome Motion for Class Certification." (Id. at 4).

The parties "affirmatively scheduled" a mediation date on January 11, 2021, after both the mid-discovery report was filed and after the Court vacated the conference, which the parties allege, prevented them from advising the Court of the mediation date. (Id.) Plaintiff's counsel concedes the scheduling order "should have been adhered to" but the failure was a result of a calendaring error and was an "oversight," not a result of "dilatory intent." (Id. at 5). As such, Plaintiff's counsel asserts that his actions amounted to "excusable neglect" pursuant to Federal Rule of Civil Procedure 60(b)(1) and is requesting this Court grant relief from the filing deadline and extend the deadline approximately five months. (Id. at 7). Notably, Plaintiff did not attempt to show good

cause under Federal Rule of Civil Procedure 16. (See Doc. 20; Doc. 22). Defendant opposes Plaintiff's motion, asserting that Plaintiff's reason for delay amounted to neither "excusable neglect" under Rule 60 nor "good cause" under Rule 16. (Doc. 21 at 5-7).

## II.     Legal Standards

### A.     Relief from Orders

The Federal Rules of Civil Procedure provide that: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . [due to] mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1); see also Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."); Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1258-59 (9th Cir. 2010) (noting Rule 6, "like all the Federal Rules of Civil Procedure, [is] to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits.") (citations and internal quotation marks omitted) (alteration in original).

The four factors courts apply when determining whether a particular action establishes "excusable neglect" are: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993); Briones v. Riviera Hotel & Casino, 116 F.3d 379, 381 (9th Cir. 1997). The term "neglect" includes "inadvertence, mistake, or carelessness, not just those caused by intervening circumstances beyond the party's control." Pioneer, 507 U.S. at 381. The determination of whether the neglect is "excusable" is "an equitable one, taking account of all relevant circumstances." Id.

### B.     Scheduling Orders

District courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). In addition, scheduling orders may "modify the timing of disclosures" and "modify the extent of discovery." Id. Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case

management problems. <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 610 (9th Cir. 1992). As such, a scheduling order is "the heart of case management." <u>Koplove v. Ford Motor Co.</u>, 795 F.2d 15, 18 (3rd Cir. 1986).

Furthermore, scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." <u>Johnson</u>, 975 F.2d at 610 (quoting <u>Gestetner Corp. v. Case Equip. Co.</u>, 108 F.R.D. 138, 141 (D. Maine 1985)). Good cause must be shown for modification of the scheduling order and may only be done at the judge's consent. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

<u>Johnson</u>, 975 F.2d at 609 (internal quotation marks and citations omitted). Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." <u>Jackson v. Laureate, Inc.</u>, 186 F.R.D. 605, 607 (E.D. Cal. 1999). The party requesting modification of a scheduling order has the burden to demonstrate:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order.

<u>Id.</u> at 608 (internal citations omitted).

**III.     Analysis**

Plaintiff does not contend that good cause exists to modify the scheduling order, which is required by Rule 16. (<u>See</u> Doc. 20; Doc 22). Plaintiff's counsel instead relies on Rule 60 in claiming his failure to timely file the motion for class certification constitutes "excusable neglect." (Doc. 20 at 7). Because Plaintiff failed to demonstrate good cause to amend the scheduling order and because Plaintiff's failure to file a timely motion does not constitute excusable neglect, the

motion is denied.

### A. Plaintiff's actions do not constitute excusable neglect.

#### 1. Prejudice to opposing party

Plaintiff contends there would be no prejudice to the Defendant because the parties had already agreed to mediation and had previously requested modification of the scheduling order. (Doc. 20 at 7). On the contrary, Defendant claims they "agreed to mediation and stipulated to extend certain deadlines," but did not agree to a five-month delay nor to an extension of the class certification deadline. (Doc. 21 at 9). Defendant also contends they would suffer prejudice as a result of being a publicly traded company, as the claims negatively impact the value of the company's stock and its "creditworthiness," not to mention the extra costs in maintaining litigations. (Id.). Plaintiff replied that even if the class claims are struck, Defendant could still be liable to multiple employees claiming wage and hour irregularities, and the fifth claim under the Private Attorneys General Act, "would still be pursued." (Doc. 22 at 4).

In examining the Joint Status Report, it is clear the parties had agreed they wanted to discuss the deadlines of the scheduling order at the status conference. (Doc. 18 at 2). However, nothing in the record shows Defendant agreed to extend the motion deadline, only that they declined to do so when Plaintiff inquired about the matter on February 25, 2021. (See Doc. 21 at 4). However, even in the absence of stipulation, it cannot generally be held that the Defendant will be prejudiced by allowing Plaintiff to file a tardy motion. See Bateman v. U.S. Postal Serv., 231 F.3d 1220, 1225 (9th Cir. 2000) (allowing a tardy response filing, which would amount to the opposing party "los[ing] a quick victory", was not prejudice sufficient to deny relief under Rule 60(b)(1)). Accordingly, although Defendant did not agree to a five-month delay of these proceedings, allowing Plaintiff to file a delayed motion for class certification is in itself insufficient to deny relief under Rule 60.

#### 2. Length of delay and impact on judicial proceedings

In examining the length of the delay and its potential impact on the judicial proceedings, it is important to note that the delay is not currently calculable, as the motion for class certification has not been filed, nor has an extended deadline, if any, been set by the Court.

The Court recognizes that Plaintiff filed this motion for relief just one day after the filing deadline for the motion for class certification. (See Doc. 20; Doc. 10). It is also noteworthy that missing the deadline has a compounding effect on judicial proceedings. For example, delaying the motion deadline by five months, as Plaintiff requests, would delay the opposition deadline by an additional two months, the reply brief deadline by an additional month, and the hearing for yet another month beyond that. This could move the hearing date from mid-June to the following year. (See Doc. 10). Additionally, the litigation expenses and potential impacts on business that Defendant points to would have a greater prejudicial effect when considering a five-month or more delay. This is unlike a week's extension to file a reply that would not have an ultimate effect on the hearing or trial dates. See Ahanchian, 624 F.3d at 1262.

However, Plaintiff has stated that if the Court deems a five-month extension excessive, in the alternative, the motion could be filed "within two months" (Doc. 22 at 5) or before the mediation date of June 28, 2021. (Doc. 20 at 5). Although a five-month delay poses more of an issue, taking into consideration the alternative dates, prejudice is of minimal concern. See Bateman v. U.S. Postal Serv., 231 F.3d 1220, 1225 (9th Cir. 2000) (citing Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima, 776 F.2d 1277, 1280 (5th Cir. 1985) ("[T]he mere possibility of prejudice from delay, which is inherent in every case, is insufficient to require denial of a 60(b)(1) motion.").

### 3. Reason for delay

The reason for delay in this case is neither helpful nor dispositive. Plaintiff's counsel asserts the motion for class certification was not timely filed because the deadline for filing the motion for class certification was deleted from the firm's "active litigation" calendar upon setting a mediation date with Defendant. (Doc. 20 at 4). Defendant argues that a calendaring error is not "excusable neglect." (Doc. 21 at 5, citing Deleon v. Denny's Inc., No. 2:20-CV-01082-JFW-MRWx, 2020 WL 4873868, at *3 (C.D. Cal. July 22, 2020).)

A calendaring error as a reason for the delay is not alone sufficient to find the neglect inexcusable. The Ninth Circuit has held that per se rules involving missed deadlines are not consistent with Pioneer. Pincay v. Andrews, 389 F.3d 853, 855 (9th Cir. 2004). In Pincay, the

movant's calendaring error was based on a failure to properly research the applicable rule. Id. at 859 ("[A] lawyer's failure to read an applicable rule is one of the least compelling excuses that can be offered.") The court, however, after a rehearing *en banc*, held there couldn't be a "rigid" rule against "late filings attributable to any particular type of negligence" and instead the equitable factors from Pioneer should be weighed. Id. at 860; see also id. at 858-59 (determining negligence is the "beginning of our inquiry as to whether the negligence is excusable, not the end of it.").

Furthermore, in Pioneer, the Supreme Court discussed that neglect "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." Id. at 388. As such, excusable neglect includes "situations in which the failure to comply with a filing deadline is attributable to negligence." Id. at 394. Whether a calendaring error is excusable cannot, therefore, be ruled out simply because of its inadvertent nature.

### 4. Good faith

Plaintiff's counsel contends the failure was "not the result of any dilatory intent but merely an oversight." (Doc. 20 at 5). Defendant does not dispute that the explanation and motion for relief were made in good faith. (Doc. 21 at 2). Further, nothing in the record indicates bad faith on behalf of the Plaintiff and the calendaring mistake does not appear to be a "post-hoc rationalization concocted to secure additional time." See Ahanchian, 624 F.3d at 1262.

### 5. Conclusion

In examining the totality of the circumstances, the length in the delay would both impact an already congested court with delayed judicial proceedings as well as prejudice the defendant. This is sufficient to conclude the calendaring error by Plaintiff's counsel cannot be held excusable. (See Pioneer, 507 U.S. at 398 ("[W]ere there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be 'excusable.'").

### B. The motion fails to demonstrate good cause to modify the scheduling order.

As stated above, "[t]he district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." Johnson, 975 F.2d at 609. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for

a grant of relief. Id.

Plaintiff cites Rule 16 in their reply but fails to make any showing of good cause to amend the scheduling order. (See Doc. 22 at 3). There are no facts alleged demonstrating that despite Plaintiff's diligent efforts to meet scheduling deadlines, those deadlines could not be met. Plaintiff asserts that he conducted a "diligent" search for a mediator (Doc. 20 at 3), "diligently" conducted discovery (id. at 4), "diligently" pursued the prosecution of the lawsuit (Doc. 22 at 2), and worked "diligently" toward informal resolution (id.). However, none of these indicates actual diligence in meeting the deadline for filing a motion for class certification. As Defendant asserts, Plaintiff's "lack of diligence caused the need for the relief he seeks." (Doc. 21 at 6.)

Significantly, it is evident from the record that Plaintiff was not diligent in preparing to meet filing deadlines when Plaintiff did not propound initial written discovery until February 26, 2021, the day after the deadline to file his motion for class certification[1]. (Doc. 21 at 4). The Court agrees with the Defendant, asserting that "even if Plaintiff had correctly calendared his motion, he still would not have been able to prepare his motion for class certification." (Id. at 6.) Plaintiff concedes that discovery was deferred once a mediation date was set and they were not in a position to file a "fulsome" motion for class certification. (Doc. 20 at 4). This statement, coupled with the inaction on Plaintiff's behalf to ensure the deadline was met, invalidates any argument of "good cause" for Plaintiff failing to meet their deadline. Despite a mediation date being calendared, the deadline was still in effect, a full four months prior to the mediation date.

Neither can Plaintiff rely upon the circumstances of COVID-19 being unforeseen. In the joint status report, the parties stated that Plaintiff being a caregiver to his children during the pandemic has impeded and delayed the discovery process. (Doc. 18 at 3). As this Court explained in the minute order on January 8, 2021 when declining to amend the schedule absent a good cause showing, "[b]ecause this case was scheduled in September 2020, seemingly, the COVID-19 pandemic cannot form the basis for an amendment to the case schedule because it had been in full swing for six months by that time and was not an unanticipated event." (Doc. 19). Thus, upon a

---

[1] The Court finds this to be the most damning piece of information in deciding this motion. Though the Court commends the parties for having an eye on resolving their case, hope that the case will settle does not equate to diligence in discovering the case.

8

finding that a party was not diligent, the inquiry ends. Johnson, 975 F.2d at 609. Plaintiff's motion fails to show good cause to amend the scheduling order. See Fed. R. Civ. P. 16(b)(4). The Court emphasizes that scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Johnson, 975 F.2d at 610 (quoting Gestetner Corp., 108 F.R.D. at 141).

**IV.     Conclusion and Order**

Based upon the foregoing, Plaintiff's motion for relief from the scheduling order (Doc. 20) is **DENIED**.

IT IS SO ORDERED.

Dated:   **March 23, 2021**                        /s/ Jennifer L. Thurston
                                                                    UNITED STATES MAGISTRATE JUDGE